Dorothy Onthank, Appellee, v. Paul Onthank, Appellant.

No. 45666.

August 4, 1941.

C. M. Manley and Clyde McFarlin, for appellee.

E. W. McNeil, for appellant.

Sager, J.—The record before us is somewhat singular—for what it suggests for speculation rather than what it actually discloses. Appellant, with what appears to have been a considerable amount of restraint, refrained from finding fault with the conduct of his wife during the time they lived together. He mildly complained that appellee objected to his driving racing cars, and that she accused him of drinking to excess when his condition was due to an affliction which resulted in the loss of about one half of his stomach. Appellee is forty-two years old; appellant, thirty-seven. They were married January 31, 1920, and appellant left home on July 6, 1940. He has expressed himself as wanting to be free and of having no intention of returning. He testified that on one occasion appellee ordered him to take his clothes and get out. Appellee denies this although a witness testified he heard her say it. Neither party accuses the other of any violence. Appellee herself admitted that there had been no trouble before he left. A son never saw appellant abuse his wife. A sister of appellee asked appellant

why he "didn't come over to the place [the home] and live happily as he had done in the last twenty years." This witness further testified:

"There was more affection shown in their family than ours. I never saw as much affection shown in a home as between my sister and her husband."

Notwithstanding this, when appellant was approached by his son to return, he said "if he did it would be the same thing over again, so he didn't want to come back," and further:

"I had a talk with my father. He told me his picture of the marriage and that the marriage was a misfortune from the start and that he had stayed and lived with mother down through the years until we children were educated, and that despite the fact of the situation in the home he made up his mind he was going to stick it out until we children were raised and educated. He was married when he was sixteen and a half years of age. I have known my father was not well, and that he had this serious operation in Rochester."

When pressed to explain just what her complaint was, appellee based it entirely upon the alleged association of her husband with the office girl in a garage out of which appellant worked as a salesman. Appellee complains that appellant was too much in the girl's company though the evidence is void of any misconduct between them. Appellant admitted taking her to and from work in bad weather but says that she was a friend of the family and went on several vacation trips with them, paying part of the expenses.

No witness testified to any unseemly conduct except a Mrs. Talbott whose voluble broadside against appellant lacks plausibility; and if it were entitled to more credence than the writer is inclined to give it, there is nothing to show that she reported to appellee what she claimed to have seen.

Whatever may have been the real reason for appellant's leaving home, appellee has wholly failed to establish any grounds for divorce. While it may be the abasement to which a devoted wife might subject herself to recapture the affections of an errant husband, appellee seems to have judged herself at fault

when in a letter written to appellant after he left imploring him to come back, she said in part:

"Paul on my knees I beg you to come back to me and the kids. Surely, I've been punished enough. * * * Don't you think I been punished enough for all the things I done to you. * * * Anything you asked I will do if you will only come back. * * *"

Finding as we do that appellee has failed to make a case under the statutes and our decisions, the decree of the trial court is reversed.—Reversed.

GARFIELD, STIGER, HALE, OLIVER, WENNERSTRUM, and BLISS, JJ., concur.